### CABROL *v.* GOURDAIN & KER et al., and GOURDAIN & KER *v.* CABROL.— Consolidated.

*The wife is without legal capacity to alienate or hypothecate the community property.*
*A mortgage made by the wife, during the existence of the community, though made with the authorization of the husband, cannot be opposed to the creditors of the latter as his act.*

APPEAL from the District Court of St. Martin, *Voorhies*, J.
     *E. Simon* and *J. G. Olivier*, for *Gourdain & Ker*, appellants. *A. Deblanc*, for *Cabrol*, appellee.

BUCHANAN, J. There are two questions necessary to be examined in this case:

1. The capacity of Mrs. *Fontelieu* (*Léontine Miguez*,) to hypothecate the property in New Iberia to *Cabrol.*

2. The sufficiency of the description of the property mortgaged.

I. Mrs. *Fontelieu* obtained, on the 2d May, 1844, a judgment of separation of property from her husband; but this judgment was never executed, and was therefore a nullity. C. C. 2402.

On the 2d of October, 1850, she purchased in her own name, authorized and assisted by her husband, a piece of ground and buildings in the town of New Iberia. This purchase must be considered as inuring to the community of acquets and gains. C. C. 2371.

On the 29th of December, 1851, she mortgaged to *Jaques Cabrol*, certain property, (the same which she had purchased, as above, on the 2d of October, 1850.) In this mortgage, she was authorized and assisted by her husband, as well as in another which she executed, of the same property, on the 29th of of March, 1853. Both those mortgages were given to secure the payment of notes of Mrs. *Fontelieu*, authorized by her husband. The property mortgaged being property of a community still existing, it is clear that Mrs. *Fontelieu* was without legal capacity to alienate or hypothecate it. This could only be done by the husband, as head of the community. But it is said, the husband

was a party to the acts of mortgage, for the purpose of authorizing his wife; and, therefore, that they should be considered as the mortgages of the husband. This view would be perfectly sound, if these acts were offered against the husband. He would not be allowed to question his liability. But the mortgages are offered against *bona fide* creditors of the husband, by judgment, for large amounts; and against such, it would, we think, be improper, under the peculiar facts of this case, to give these mortgages any validity. The record exhibits Mrs. *Fontelieu* as suing her husband for a separation of property, and for paraphernal rights, in April, 1844, upon the allegation that her husband's affairs are embarrassed. One month afterwards, she obtains a judgment according to the prayer of her petition; which she never attempts to execute. In December, 1851, goods are purchased for the husband's store, of *Cabrol*, for which two witnesses state, that the note of the wife is given for $1,521 03, payable the 1st of April, 1856, or more than four years after date. On the 29th of March, 1853, a similar purchase of goods is made, if we may believe the same witnesses, in payment of which Mrs. *Fontelieu* gives her note for $1000, payable on the 1st of April, 1853, or three days after date. After this, *Fontelieu*, the husband, has large transactions with merchants in New Orleans in his own name, which bring him in debt rising fifteen thousand dollars.

These merchants put their claims in suit, and obtained judgment in October, 1854; and *Cabrol* puts in suit simultaneously his note for $1,000, which was eighteen months past due, and his note for $1,521, which had yet eighteen months to run to maturity. Simultaneously with this movement of her creditor, *Cabrol*, Mrs. *Fontelieu* again sues her husband for paraphernal rights and separation of property, which suit is brought to judgment in three days from the filing of the petition.

These circumstances afford sufficient reason for questioning the good faith and reality of the claims of *Cabrol*, and for inferring, in the words of the petition of *Gourdain & Kerr*, " fraudulent collusion between the parties to the conventional mortgages, for the purpose, prospectively, of securing *Fontelieu's* property from the pursuit of his creditors.

Our decision upon this point, renders it unnecessary to decide upon the objection of insufficiency of description of the property mortgaged.

It is therefore adjudged and decreed, that the judgment of the District Court be reversed; that the injunction of *Gourdain & Ker*, be perpetuated, and that the injunction of *Jacques Cabrol* be dissolved; that *Gourdain & Kerr* recover of *Jacques Cabrol* and *Pierre Cabrol*, principal and surety in the injunction bond, *in solido*, two hundred dollars damages, and three per cent. per annum interest from the date of injunction till paid, upon the amount of the judgment of *Gourdain & Ker* v. *J. Fontelieu* enjoined; that *E. Girard & Co.*, recover of *Jacques Cabrol* and *Pierre Cabrol*, principal and surety in the injunction bond, *in solido*, two hundred dollars damages, from the date of injunction till paid, upon the amount of the judgment of *E. Girard & Co.* v. *J. Fontelieu*, enjoined; and lastly, that *Jacques Cabrol*, pay costs in both courts.